J. WILFRID BEAUCHEMIN & others *vs.* J. FRANK FLAGG & another.

Worcester.   October 2, 1917. — January 2, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Elections,* Marking of ballot.

In the provision of the election laws contained in St. 1913, c. 835, § 292, as amended by St. 1914, c. 435, that "The voter on receiving his ballot shall, . . . except in the case of voting for presidential electors, prepare his ballot by making a cross [X] in the square at the right of the name of each candidate for whom he intends to vote," the requirement that the cross shall be marked "in the square" is merely directory and not mandatory, and a vote for a candidate may be counted where the cross was marked by the voter against the name of the candidate between that name and the square, if the intention of the voter to vote for the candidate is manifest.

PETITION, filed on March 20, 1917, by ten qualified voters of the town of Hubbardston for a writ of mandamus addressed to J. Frank Flagg, the moderator of the annual town meeting held on February 5, 1917, and William H. Wheeler, the town clerk of Hubbardston, commanding them to make a recount for school committee, counting as blank seven ballots which at the town meeting were counted for Maud Vanston Lufkin as a member of the school committee and declaring George H. Kelton, the opposing candidate, to have been elected a member of the school committee.

The case was heard by *Carroll,* J., who made the findings of fact and the ruling of law that are described in the opinion. He made an order for a decree that a writ of mandamus should issue and at the request of the parties reported the case for determination by the full court. If the ruling of law made by the single justice was right, the writ was to issue. If the ruling made by him was wrong, the petition was to be dismissed.

The case was argued at the bar in October, 1917, before *Rugg*, C. J., *Loring, Braley, De Courcy, & Pierce*, JJ., and afterwards was submitted on briefs to all the justices except *Loring & Carroll*, JJ.

*H. W. Blake*, for the petitioners.

*C. M. Thayer, F. C. Smith, Jr., & G. A. Gaskill*, for the respondents, submitted a brief.

DE COURCY, J. At the annual town meeting in Hubbardston Maud Vanston Lufkin was a candidate for the school committee. On the original count and at the recount she was declared elected. Seven of the ballots counted for her were marked, each with a cross against her name and between the square and her name, but not in the square. If these seven ballots are not counted for her George H. Kelton, her opponent, will be elected. The single justice before whom the petition for a writ of mandamus was heard, found as a fact that it was the intention of the voter in each case to vote for Maud Vanston Lufkin. He ruled as matter of law, however, that the statute required the voter to express his choice in the square, and not elsewhere on the ballot, and the ballots must be counted as blanks; and reported the case to the full court with a stipulation that if this ruling was not right the petition should be dismissed.

Where a ballot is so marked that upon inspection it indicates with reasonable certainty the candidate for whom the elector intended to vote, the vote should be counted in accordance with that intent, provided the voter has substantially complied with the requisites of the election statute. *Strong, petitioner*, 20 Pick. 484. *Ray* v. *Ashland*, 221 Mass. 223. *Woodward* v. *Sarsons*, L. R. 10 C. P. 733. It is settled by the finding of the single justice that these seven voters intended to cast their ballots for Mrs. Lufkin. That distinguishes this case from *O'Connell* v. *Mathews*, 177 Mass. 518 and *Flanders* v. *Roberts*, 182 Mass. 524, where the intent of the voter was left to mere conjecture, as the cross was marked in the square opposite a blank; and from *Brewster* v. *Sherman*, 195 Mass. 222, where the single justice was unable to determine how the voter intended to vote on the question submitted.

That these seven voters honestly attempted to comply with the terms of the statute is not questioned. In order to determine whether there was a substantial compliance with its provisions

it is well to have before us the following sections which are applicable:

St. 1913, c. 835, § 259. ". . . Ballots shall be so printed as to give to each voter an opportunity to designate by a cross [X], in a square at the right of the name and designation of each candidate . . . his choice of candidates. . . ."

Section 292 (as amended by St. 1914, c. 435). "The voter on receiving his ballot shall, . . . except in the case of voting for presidential electors, prepare his ballot by making a cross [X] in the square at the right of the name of each candidate for whom he intends to vote or by inserting the name and residence of such candidate in the space provided therefor and making a cross in the square at the right; and, upon a question submitted to the vote of the people, by making a cross in the square at the right of the answer which he intends to give."

Section 303. ". . . If a voter marks more names than there are persons to be elected to an office, or if his choice cannot be determined, his ballot shall not be counted for such office."

It is to be noted that, although § 292 provides that the voter shall make a cross "in the square at the right of the name," the only provision which expressly forbids the counting of a ballot deposited in the ballot box is § 303, and that applies only to cases where the voter's choice cannot be determined.

The Legislature, in contested election cases, has construed this requirement as to marking a cross in the square to be directory and not mandatory, where the voter's intent is manifest. See *Moore* v. *Booth*, 1910, House Document 259 and *Riley* v. *Aldrich*, 1904, House Document 343 — where crosses were marked between the candidate's name and the square. Under the earlier statute it was likewise held that such informality does not nullify the ballot. *Shepard* v. *Sears*, Mass. Election Cases, 1886–1902 (Russell's ed.), 30; *Jones* v. *Loring*, 36; *Adams* v. *Moore*, 79.

The precise question here involved has not been before this court. In *Ray* v. *Ashland*, 221 Mass. 223, 226, the candidate's name was not printed on the ballot, and the voter used a paster on which the candidate's name appeared. Section 259 of the election statute provides: "Blank spaces shall be left at the end of the list of candidates for each different office, equal to the number to be elected thereto, in which the voter may insert the name of any per-

son not printed on the ballot for whom he desires to vote for such office." Instead of placing the paster in the blank space the voter placed it over the name of the candidate printed on the ballot. It was held that the ballot properly might be counted as a vote for the person named on the slip, the statutory provision as to the precise place of inserting the name being directory and not mandatory. In our opinion that case in principle governs the case at bar; and the language used in the opinion is equally applicable here: "The statute does not say that he [the voter] must use this mode of expressing his will or his ballot is defective. If the construction by implication the petitioner urges is adopted, he [Kelton] gets an office to which he has not been elected, unless the will of a majority of the voters at an election, where no fraud or misconduct appears or is claimed, is nullified, a result wholly inconsistent with the spirit of our election laws. The Legislature, if it intended to restrict the voter to the use of the blank spaces [squares] alone, should have directed in appropriate language that this was the only way in which the voter could express an independent choice."

The decisions in other jurisdictions as to such irregularities in marking a ballot are not uniform. In some States the Massachusetts rule is adopted, and emphasis is placed upon giving effect to the voter's intention where it can be fairly determined on inspection of the ballot. In other States the provisions of the local statute as to the position of the cross mark are construed to be mandatory; or emphasis is placed on the possibility that marking the ballot in an improper place may reveal the identity of the voter, and render the ballot invalid for that reason. For collection of cases see 20 Ann. Cas. 672, 674; 47 L. R. A. 806, 827–831; 15 Cyc. 354, 357. Mass. Election Cases, 1886–1892 (Russell's ed.), editor's note 89–100.

To avoid misapprehension it may be said that this decision does not involve the question whether the location of the cross constituted a "mark upon a ballot by which it may be identified," within the prohibition of § 295. Presumably the single justice determined that question of fact in the negative, as he did not report it for our consideration.

For the reasons hereinbefore stated a majority of the court are of opinion that the statute did not make it mandatory to count

these seven ballots as blanks; and in accordance with the terms of the report the petition should be dismissed.

*Ordered accordingly.*