Barbara A. DePetrillo *vs.* Registrars of Voters of Rehoboth & another; Harold W. Ingram, Junior, intervener.

Bristol. December 7, 1960. — February 6, 1961.

Present: Wilkins, C.J., Spalding, Williams, Cutter, & Kirk, JJ.

*Elections. Law or Fact. Practice, Civil,* Election case.

In an election case where the only evidence before the trial court was certain ballots protested on a recount under G. L. c. 54, § 135, the proper counting of such ballots according to what appeared on their face was a matter of law for the trial court and this court; the determination of the registrars of voters was not final. [14]

Upon an examination of certain ballots cast at an election, a ballot on which the voter had indicated his preferences by check marks rather than crosses should be counted for the candidates checked; and each of several ballots, on which, for an office where there were two places to be filled, the voter had placed marks against the names of more than two candidates and then had cancelled one or more marks leaving uncancelled the marks against the names of two candidates, should be counted for the two. [15–16]

The validity of absentee ballots cast at an election was not open at a recount held under G. L. c. 54, § 135, as amended through St. 1959, c. 155, § 2, upon a petition alleging only inaccurate counting of the ballots, and was not open before the courts in a subsequent mandamus proceeding involving the recount. [16–17]

A petition for recount of an election under G. L. c. 54, § 135, as amended through St. 1959, c. 155, § 2, alleging that the petitioners had reason to believe and did believe that the "records made by the election officers . . . [were] erroneous in the results of the · . . . contest [for a specified office], specifically the tabulated totals of" the named candidates, sufficiently complied with the requirements of the second paragraph of § 135. [16]

PETITION filed in the Superior Court on March 29, 1960. The case was heard by *Smith, J.*

The case was submitted on briefs.

*Peter B. Gay & Charles H. McGlue,* for the petitioner.

*Gordon M. Owen,* for the respondents.

*Matthew S. Heaphy,* for the intervener.

KIRK, J. This is a petition for a writ of mandamus against the Registrars of Voters of the town of Rehoboth, and the town clerk, brought by Barbara A. DePetrillo, one of four candidates for the school committee of the town at an election held March 7, 1960. Harold W. Ingram, Junior, another candidate for the same office, was permitted to intervene. The case comes to us in the form of a report by the judge. G. L. (Ter. Ed.) c. 231, § 111.

The original count of the ballots was as follows: Waite 898, Ingram 894, DePetrillo 897, and Simas 806. DePetrillo was sworn into office the same night, March 7, 1960.

Upon the petition of Ingram, pursuant to G. L. c. 54, § 135, as last amended by St. 1959, c. 155, § 2, there was a recount on March 24, 1960. The result for second place was DePetrillo 898, Ingram 898. DePetrillo protested three ballots at the recount, which are before us as exhibits 1-A, 1-B, and 1-C. It is settled that the recount by the board of registrars is not final. *Flanders* v. *Roberts,* 182 Mass. 524, 527, 528. *Kane* v. *Registrars of Voters of Fall River,* 328 Mass. 511, 516. Where the only evidence is the ballots it is the function of the judge to determine what legal effect should be given to them. It is a question of law. When the same question is brought before us we have the same function. *Kane* v. *Registrars of Voters of Fall River, supra,* at pp. 517 and 518. The basic purpose of the scru-

tiny of the ballot is to ascertain the will of the voter if it can be done with reasonable certainty. *O'Brien* v. *Election Commrs. of Boston,* 257 Mass. 332, 338. The principles which guide us in accomplishing this purpose are set forth in the *Kane* case at page 518, with cases cited, and need not be restated here. *Munn* v. *Dabrowski,* 335 Mass. 41, 43. We have examined the three protested ballots and have reached the same conclusion as the judge. Inasmuch as his descriptions of them are brief and complete, we quote them as our own, with a minor modification as to ballot 1-B as indicated in brackets:

"Exhibit 1-A, a ballot cast in block 36, was protested by one of the registrars, E. L. Roy, and by Mr. Gay, the attorney for DePetrillo. The vote was counted by a majority of registrars for Ingram. On this ballot the voter indicated his preference by a check mark rather than a cross. The voter did not vote a so called 'straight' Republican ticket. In the contest for election of seven constables he voted for six Republicans and one Democrat. The controversy here arises over his vote for the two members of the School Committee. An examination of the ballot shows that the check marks were generally clear and defined and seemingly made by a person more than ordinarily familiar with making such marks. On the vote for School Committee this voter check marked all four candidates and then apparently attempted to cancel the marks against the Democratic candidates, DePetrillo and Simas. The marks drawn against the check for DePetrillo and Simas appear sufficiently clear to indicate the intention of the voter to cancel the vote for these candidates. I rule that this ballot was properly counted by the registrars for Ingram.

"Exhibit 1-B was challenged by DePetrillo, after having been counted as a vote for Ingram and DePetrillo. The ballot . . . [shows a cross in the box opposite the names of] Ingram, Republican, and Waite, Republican [and De-Petrillo], but through the cross opposite the name Waite the voter has drawn three distinct and definite marks, indicating a cancellation of said vote and the vote was given to

DePetrillo and counted for her. I rule that this ballot was legally counted for Ingram and DePetrillo.

"Exhibit 1-C shows that the voter had voted for De-Petrillo and had cancelled the vote by having obliterated the cross opposite the DePetrillo name. The original cross was obliterated by superimposing a heavy black pencil mark, plainly indicating the intent of the voter to cancel this vote. This vote was counted for Ingram and Waite and I rule that it was correctly counted."

The result is that Ingram is to be credited with 898 votes and DePetrillo is to be credited with 898 votes.

There is another question presented in the report of the judge which must be answered. Did the court have jurisdiction to pass upon the validity of the applications for absentee ballots and in consequence to rule as to the validity of the ballots which were returned in the ballot envelopes pursuant to the applications? We are of the opinion that on the record the court was without jurisdiction of this aspect of the case. As stated before, the petition for recount was filed by Ingram. The body of the petition states: "Because of the closeness of the count and the ever present chance of human error in the method used to tabulate the votes cast, I have reason to believe and do believe that the records made by the election officers . . . are erroneous in the results of the School Committee contest, specifically the tabulated totals of [the named candidates]." The trial judge ruled that this petition for recount was substantially in conformity to G. L. c. 54, § 135, first paragraph.

There is no question that the formalities of the first paragraph were complied with; we think the judge intended to rule that the petition substantially conformed to the requirements of the second paragraph of the statute with regard to specifying the question to be considered on the recount. Whether or not he so intended, we hold that the petition for recount sufficiently complied with the requirements of G. L. c. 54, § 135, second paragraph. *Opinion of the Justices,* 136 Mass. 583, 588. The averments of the petition relate only to the accuracy of the count of the bal-

lots. There is no specification that "challenged votes were cast by persons not entitled to vote therein." G. L. c. 54, § 135, second paragraph.

So far as appears from the record, DePetrillo filed no petition for a recount on any ground, nor did she file any statement in connection therewith. The statute provides: "All recounts shall be upon the questions designated in the statements or petitions filed, and no other count shall be made, or allowed to be made, or other information taken, or allowed to be taken, from the ballots on such recount, except that in the case of a recount of the ballots for an office, the votes cast for all of the candidates for such office, including blanks cast, shall be recounted and all spoiled and unused ballots shall also be counted and the results recorded on the blank forms provided therefor." G. L. c. 54, § 135, eighth paragraph.

It does not appear that the registrars considered the question of the validity of the absentee ballots. According to the terms of the statute they were precluded from considering the question. So was the court on the petition for a writ of mandamus. It therefore becomes unnecessary for us to pass upon the absentee ballots which the trial judge had considered on a de bene basis only.

Since the registrars properly counted the disputed ballots, the petition for a writ of mandamus should be dismissed.

*So ordered.*